**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WINFORD TRACY JUSTICE | * | |
| Plaintiff | * | |
| v | * | Civil Action Case No. JFM-11-266 |
| WARDEN KATHLEEN GREEN | * | |
| DOCTOR GETACHEW | | |
| DOCTOR PAUL MATERA | * | |
| JAN WILLIAMS, R.N. | | |
| MELISSA HIXON | * | |
| CORRECTIONAL MEDICAL SERVICES | | |
| | * | |
| Defendants | | |

\*\*\*

**MEMORANDUM**

Now pending is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by defendants Asresahegn Getachew, M.D. and Paul Matera, M.D. ("Defendants") (ECF No. 52). Plaintiff Winford T. Justice opposes the motion. (ECF Nos. 54 and 55). The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). After careful consideration of the pleadings, exhibits, and applicable law, the court will grant defendants' motion for summary judgment.

**I.    BACKGROUND**

Justice, an inmate at Eastern Correctional Institution, claims defendants failed to provide him with adequate treatment for back pain and a urinary condition. He further alleges defendants delayed his neurology consultation. As redress, he wants $30,000 and declaratory and injunctive relief.

By order of February 2, 2012, the court denied defendants' Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment, subject to renewal. (ECF No. 47).[1]  Defendants'

by their counsel, subsequently filed the instant dispositive pleading.

## II. FACTS

Plaintiff's medical history is outlined in detail in the court's memorandum of February 2, 2012 (ECF No. 46), which is incorporated herein by reference.

### A. Back Pain

Justice has a history of chronic lumber disc displacement.  He reports associated symptoms including bladder and bowel incontinence.  Two separate requests for a neurology consultation request to rule out *cauda equina* syndrome, a possible cause of incontinence resulting from compression of the nerves in the lower portion of the spinal canal,[2] have been submitted for Justice.  Both requests were denied by Wexford Health Sources, Inc., the utilization review contractor for the State of Maryland. [3]

On November 28, 2011, Justice informed Dr. Matera that he had not been incontinent of urine for two weeks, but had suffered episodes of bowel incontinence.  Examination of Justice's adult diaper showed no stain or stool.  His physical examination revealed: 1) his abdomen was soft and non-tender with normal bowl sounds, normal cremasteric reflexes;[4]  2) normal rectal

---

[1] In the court's February 2, 2012, order summary judgment was granted in favor of defendants Correctional Medical Services, Jennifer Williams, R.N. and Melissa Hixon, R.N., and Warden Kathleen Green was dismissed as a defendant. ECF No. 47.

[2] *See* Exhibit A, n. 3.

[3] As previously noted, Wexford Health Sources is the utilization review contractor for the State of Maryland.  ECF No. 47, Wexford reviews and approves all requests for on-site and off-site consultants for certain medical devices and other tests.  Corizon (formerly known as Correctional Medical Services) is not affiliated with Wexford, nor does it have any control over Wexford's approval process.  ECF No. 46,  n. 8.

[4] Cremasteric reflex is tested by stimulation of the skin on the front and inner thigh which causes retraction of the testis on the same side. Exhibit, A, n. 4.

tone;[5] 3) normal wink;[6] and 4) stool negative for occult blood.  Exhibit A,  Affidavit of Paul Matera, M.D., p.  3-4.  Dr. Matera attests "Neither I nor any nurses to the best of my knowledge after review of Justice's medical records ever saw a diaper of Justice's with stool in it. " Exhibit A, Affidavit of Paul Matera, M.D. p. 3, ¶ 5.

Justice has plates and screws in his back from previous surgery.  Dr. Matera describes Justice's range of motion (ROM) as normal.  On December 27, 2011, Dr. Matera noted Justice's last CT scan showed no changes from his previous scan.  Justice was advised to comply with his exercise program to help his back pain and ordered to avoid work, gym and weight lifting. Exhibit A, p. 4, ¶ 6.

On January 18, 2012, Dr. Matera admitted Justice to the prison infirmary to evaluate his complaints of worsening low back pain.  Justice was in the Infirmary from January 18-20, 2012, where he was observed walking about his cell, jumping up to talk to corrections officers, laughing and joking with other inmates, and laying on his abdomen in his bed.  He was observed to sleep eight or nine consecutive hours at night.  Justice did not appear to be in any distress while in the infirmary.  Exhibit A, p. 4, ¶ 7; Exhibit B, 68-90.  On February 2, 2012, Lino Quilo, M.D. examined Justice and cleared him to work, but restricted his recreation activities.  Exhibit B, 92-94.

Justice states that he was placed in an isolation cell in the infirmary that was so cold he was placed in severe pain.  ECF No. 43.  He states that the isolation cell was in full view of the nursing station and that he felt humiliated by his lack of privacy.  *See id.*  Justice indicates he

---

[5]  Rectal tone is the tightness of the rectum which keeps stool from leaking.  Exhibit A, n. 5.

[6] When each side of the buttocks is scratched with a gloved finger, a superficial anal reflex (the anal "wink) is produced.  Exhibit A, n. 6.

walked about the cell to stay warm and never received the extra blanket he requested. ECF No. 54, p. 2.

### B. Urinary Incontinence

Dr. Matera examined Justice and noted the prostate was smooth and nontender. Justice's renal functions are normal. Justice receives adult diapers for urinary incontinence. Exhibit B. pp. 1-3, 6-7, 11, 43-45, 56-57. A post-voiding urine residual test showed that Justice is not retaining urine. Justice refused to start a trial of medication for prostate problems. Exhibit B, pp. 56-57, 107.

When Justice was admitted to the Infirmary on January 18, 2012, all his urine was to be collected for a 24-hour period and the staff was directed to notify a physician of the amount collected because too much or too little urine can be a sign of disease and would warrant further testing. Justice was not given any diapers so that all of his urine could be measured. On January 19, 2012, a nurse observed Justice urinating into the toilet. Justice told her he forgot to use the collection container. Justice asked Dr. Jason Clem that same day for more diapers because he had soiled his underwear with urine. Dr. Clem emphasized to Justice the importance of obtaining an accurate measure of his urine output. Justice's urine volume was within normal limits and he was able to hold his urine and urinate in the collection container except for the one reported incident. Exhibit A, p. 6. ¶ 13. At his February 2, 2012 examination with Dr. Quilo, Justice was provided with diapers. Exhibit B, pp. 92-94.

In his reply, Justice claims Dr. Clem "witnessed that Plaintiff had soiled his underwear and in fact order a clean pair of bed sheets for him." ECF No. 54 p 16. He faults medical staff for administering the wrong dose of Ultram to him, and disputes the accuracy of the urine collection.

4

*See id*.

### C. Pain

Justice is prescribed Ultram 100 mg in the morning and the evening for his complaints of chronic low back pain. He has also been given Motrin (ibuprofen) for back pain. Justice wrote a letter to Dr. Jason Clem dated January 4, 2012, complaining that his pain level was more than 10 on a scale of one to ten, with ten being the highest level of pain. Justice wrote in his letter that Dr. Matera had agreed to increase the morning Ultram to 150mg. Exhibit B, p. 66. Dr. Matera attests that he did not tell Justice that he would make such an increase. Exhibit A, p. 7, ¶ 15. He told Justice that based on his infirmary evaluation, the regimen of 100 mg once the morning and once at night was adequate to treat his complaints. Exhibit B, p. 91.

Dr. Matera states:

> When I admitted Justice to the Infirmary on January 18, 2012, I prescribed an increase in his morning Ultram dose to 150 mg. for three days only, to see if it helped decrease his pain level. On that date, Justice rated his pain as ten out of ten and received a total of 250mg.[7] at 9:40 am. At 11:00 a.m., however, he still rated his pain as eight out of ten. On January 19, 2012, Justice treated his pain as eight out of ten. On January 19, 2012, Justice rated his back pain as ten out of ten. On January 20, 2012 at 10: 38 am, Justice rated his pain as five out of ten. Tylenol was also prescribed for Justice's complaints of pain.

Exhibit A, p. 7, ¶ 16.

### D. Skin and Knee Ailments

In 2011, Justice was treated for cellulitus, a bacterial infection, in his right knee. The infection was resolved after treatment. He has also been treated for erythematous, a red, itchy scaly rash on his knees. Exhibit B, pp. 8-10, 12-13. Additionally, he has been treated for a

---

[7] Dr. Matera posits the nurse might have misread the dosage, but states Justice suffered no adverse effects from the single extra 100 mg dose, nor did he experience significant pain relief. Exhibit A, n. 9.

bruise on his right knee, eczema on his knees and a possible infection for which he was prescribed oral antibiotics. He has also been given steroid cream for knee rashes. In response to his complaints of knee pain, a rheumatoid panel was ordered to rule out rheumatoid arthritis of the knee. Exhibit B, pp. 19-28. The results of Justice's blood tests for rheumatology were within normal limits, indicating that he does not have rheumatoid arthritis. Exhibit A, p. 10, ¶ 21, Exhibit B, p. 45. Justice also receives emollients for his psoriasis and antibiotic cream as needed. Exhibit B, pp. 63-64.

### III.   MOTION FOR SUMMARY JUDGMENT

Where the parties present matters outside of the pleadings and the court considers those matters, the motion is treated as one for summary judgment. See Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp.2d 551, 556 (D. Md. 2003). A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof ... will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314

(4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50. (citations omitted). The court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

IV.   **DISCUSSION**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173,(1976). To state an Eighth Amendment claim for denial of medical care, defendants' actions (or their failure to act) must demonstrate deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted, the medical condition must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340  n. 2 (4th Cir.1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials

who lacked knowledge of a risk cannot be said to have inflicted punishment.' " *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir.1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence or malpractice does not rise to a constitutional level. *See Miltier v. Born,* 896 F.2d 848 (1990). An inmate's disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

Viewing the facts in the light most favorable to Justice, the court finds that he has not shown that defendant acted with deliberate indifference to his serious medical needs. Justice's medical records show that he was examined, tested, provided medication, and other therapies to address his back pain, claimed incontinence, and other ailments. Justice was admitted to the hospital infirmary for additional testing and evaluation for his complaints of back pain and urinary and fecal incontinence. Neurological consultations were requested for Justice on two separate occasions.[8] Further, although defendants assert Justice's complaints of incontinence cannot been verified, they have regarded his concerns seriously. Justice has been tested, monitored, and offered treatments for his various complaints. He is provided medication for his back pain and receives adult diapers for his complaints of incontinence. Although Justice may

---

[8] Justice provides no factual basis for his claim that defendants delayed his neurological consultation.

8

not agree with the course of his medical treatment, he cannot show defendants acted with deliberate indifference to his serious medical needs.[9] Justice has not shown defendants acted with conscience disregard of a substantial risk of serious harm or that they have provided treatment so grossly incompetent to shock the conscience. No genuine issue of material fact is presented and defendants are entitled to summary judgment in their favor.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment shall be granted. A separate order follows.

June 12, 2012             ___/s/_____
Date                                                       J. Frederick Motz
                                                            United States District Judge

---

[9] Consequently, Justice's request for appointment of counsel and to add Wexford Health Sources as an additional defendant, contained in his memorandum in support, will be denied. Justice may file a separate civil action against Wexford. The court expresses no opinion as to the merits of such a proceeding.